# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AVERY SINGLETON, # R-29723, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-1176-MJR |
| ) | |
| DAVID RAINS, ) | |
| DR. LEO NARODISTKY, ) | |
| PHIL MARTIN, ) | |
| DR. SANDHU, ) | |
| and MRS. SLICKENMEYER, ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Vienna Correctional Center ("Vienna"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's claims arose while he was confined at Robinson Correctional Center ("Robinson"), and he filed the action while he was in Jacksonville Correctional Center ("Jacksonville"). Plaintiff claims that the prison dentist at Lawrence, Dr. Narodistky, delayed treatment for a damaged tooth and rendered improper treatment that caused him pain. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

**The Complaint**

On August 15, 2016, while Plaintiff was at Robinson, he sought treatment from Dr. Narodistky for a broken tooth (tooth #7). (Doc. 1, p. 14). Plaintiff asked for a repair using "flo[w]able composite," which he had received earlier on the same tooth while at the Cook

County Jail, and outside prison. Some of that composite remained on Plaintiff's tooth from his earlier dental work. Narodistky responded that he could not do the composite repair, and all he could do was extract the tooth. Because the composite on his tooth was not completely chipped away, Plaintiff did not choose the extraction.

At some point after the August 15 dental visit, while eating, Plaintiff cracked the flowable composite where it had bonded his tooth back together. This made it difficult for him to eat, because he was trying to avoid completely breaking the tooth.

On approximately October 31, 2016, Plaintiff returned to see Narodistky, and asked if he could get a temporary crown and a root canal. Narodistky said that a root canal was too costly and the IDOC would not pay for it, so all he could do was extract the tooth. Plaintiff asked if the tooth could be bonded together with the flowable composite. Narodistky instead suggested that Plaintiff should let him extract the tooth and replace it with a partial, and reiterated that he could not do a crown and root canal due to cost limitations. (Doc. 1, p. 15). Plaintiff wanted to save the tooth, because it was not painful or infected, just cracked, and other dentists had been able to bond the tooth. *Id.*

Plaintiff also asked for partials for the lower left and right rear of his mouth where he was already missing other teeth. Narodistky would only provide these partials if Plaintiff agreed to pay $80. (Doc. 1, p. 15).

Plaintiff filed grievances on October 31 and November 20, 2017, to complain about Narodistky's refusal to repair the tooth.[1] (Doc. 1, pp. 16, 27, 29-32). In December 2016, after receiving the response to his grievances, Plaintiff was called back to see Narodistky. This time, Narodistky agreed to give Plaintiff a crown for the problem tooth #7. However, the work would

---

[1] The December 12, 2016, response denying this grievance notes that Plaintiff's medical records reflected that the tooth was "broken (tooth from root)" and needed an extraction, and that a composite was "not a proper procedure for this dental issue." (Doc. 1, p. 27).

not be done until January 2017. Narodistky showed Plaintiff the type of crown he would get (silver), and explained that he would first "build the tooth up," and then put on the crown. Narodistky then "snatched the lower broken part of the chipped tooth off . . . with his hand." (Doc. 1, p. 16). This caused Plaintiff some slight pain.

Around January 15, 2017, Plaintiff went to see Narodistky expecting to get the metal crown. However, Narodistky said that instead of putting on a crown, he would "build up the tooth like a regular tooth." (Doc. 1, p. 16). Plaintiff agreed, because he was tired of the delay. Within 2 days after the buildup procedure, Plaintiff's tooth was in excruciating pain. Before the treatment, Plaintiff had not had any problem with that tooth, other than the fact it was cracked. When Plaintiff reported the pain, Narodistky asked him whether he was ready to have the tooth pulled now, which suggested to Plaintiff that the dentist intentionally did something to infect his tooth. (Doc. 1, p. 17). Narodistky prescribed ibuprofen and antibiotics at that time. (Doc. 1, pp. 38-39).

Plaintiff's attached documents reveal more details as to the chronology of events after this point. On April 4, 2017, Plaintiff signed up for sick call to see the dentist, and also wrote a letter to Martin, Warden Rains, and Slickenmeyer (Director of Nursing). (Doc. 1, pp. 40, 43-45). In the letter, Plaintiff complained that Narodistky had initially refused to perform a root canal and crown on the tooth that Plaintiff believed could be saved; complained that Narodistky failed to put on a crown after initially agreeing to do so; stated that he had been in pain ever since undergoing the tooth buildup procedure despite getting antibiotics and ibuprofen from Narodistky about a week after the procedure; and noted that Narodistky denied his request for a root canal because he did not have the necessary tool. Plaintiff asked to be scheduled to see somebody who could perform a root canal in order to relieve his pain, and noted that Narodistky

4

had not done any x-rays to check the condition of the painful tooth. (Doc. 1, p. 45). In the Complaint, Plaintiff states that Martin, Rains, and Slickenmeyer did nothing to address his needs. (Doc. 1, p. 17). However, Plaintiff notes in his grievance narratives that he was called in for a dental x-ray soon after he sent the letter. (Doc. 1, pp. 34-35). At an unspecified time, Plaintiff spoke to Martin (Health Care Administrator) about a grievance (the Complaint does not specify which one), but Martin merely responded that "the rules are the rules," and walked away.[2] (Doc. 1, p. 17).

Narodistky also visited Plaintiff over a period of several days to check on his condition, while Plaintiff was housed in segregation, starting on approximately April 5, 2017. (Doc. 1, p. 40). Narodistky performed the x-ray, which showed an infection; he then prescribed penicillin and ibuprofen. *Id.* Several days later, Plaintiff told Narodistky that the infection in his gums seemed to be getting worse, so Narodistky gave Plaintiff a stronger antibiotic. *Id.*

When the pain continued to intensify, on approximately April 11, 2017, Narodistky examined Plaintiff in his office and explained that a portion of the tooth buildup must be removed in order to drain the abscess/infection. (Doc. 1, pp. 18, 40-41). Narodistky did that procedure and the area began to drain. *Id.*

Plaintiff asked Narodistky to perform the root canal. (Doc. 1, pp. 18, 42). Narodistky said that he was unable to do so, because he did not have the special tool needed for a root canal. However, he told Plaintiff that the procedure was "about 80% complete" based on what he had already done. *Id.* At some point, Narodistky requested his supervisor (Dr. Sandhu) to allow a referral for Plaintiff to be treated by a root canal specialist. (Doc. 1, p. 18; *see also* Doc. 1, p.

---

[2] In the context of the several grievances Plaintiff filed in April 2017, Martin's comment on the "rules" may have been in response to Plaintiff's complaint over not being allowed out of segregation to see Narodistky in his office; instead, the dentist had only been allowed to consult with Plaintiff in the segregation unit, where they had to speak while separated by a steel door. (Doc. 1, pp. 23-24; 34-35; 40).

5

50). Sandhu denied the referral.

A few days later, Narodistky visited Plaintiff in the segregation unit and told him that Wexford had agreed to provide the tools for him to complete the root canal at the prison. (Doc. 1, pp. 18, 42). Plaintiff agreed to this plan, but he was transferred to another prison before Narodistky could obtain the tool and finish the root canal.

Plaintiff complains that if Narodistky had not denied his request for a composite repair, or root canal and crown back in the fall of 2016, he would not have had to suffer the pain and distress from undergoing the buildup procedure, contracting the infection, and then having the incomplete root canal. (Doc. 1, pp. 19, 42). Between October 2016 and January 2017, while Narodistky was refusing to perform a root canal, Plaintiff had much difficulty eating certain food because of the cracked tooth. (Doc. 1, p. 19). Narodistky initially claimed he could not repair the tooth, but then finally agreed to do it after Plaintiff filed grievances. (Doc. 1, p. 19). Plaintiff believes that the Defendants lied to him when they said that the IDOC does not do root canals, in order to convince Plaintiff to have the tooth pulled. (Doc. 1, p. 42).

After Plaintiff's transfer to Jacksonville, his condition worsened. The infection and pain returned, and he was treated with antibiotics and pain medication. (Doc. 1, p. 42). As of the time Plaintiff filed the instant Complaint, the tooth was still in Plaintiff's mouth and nothing had been done to complete the root canal. (Doc. 1, p. 19). Furthermore, Plaintiff never got the 2 partials he needed, because he did not have the required $80. *Id.*

Plaintiff seeks monetary damages for the alleged violations of his rights. (Doc. 1, p. 20).

### **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all

future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Dr. Narodistky for denying and delaying treatment for Plaintiff's cracked (and then infected) tooth, and for failing to provide 2 partials to replace other missing teeth;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Rains, Martin, and Slickenmeyer, for failing to ensure that Plaintiff received appropriate treatment for his dental condition;
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Dr. Sandhu, for turning down Dr. Narodistky's request to refer Plaintiff to an outside specialist for a root canal;
>
> **Count 4:** State law dental malpractice claim against Dr. Narodistky for failing to properly treat Plaintiff's damaged tooth.

The claims in Counts 1 and 3 shall be referred for further consideration. However, Counts 2 and 4 fail to state a claim upon which relief may be granted, and shall be dismissed.

**Deliberate Indifference to a Serious Medical/Dental Condition**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The Seventh Circuit has recognized that dental care is "one of the most important medical needs of inmates." *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (allegations that an inmate denied his dentures could not chew his food, making eating difficult, and that he suffered bleeding, headaches, and disfigurement, stated a serious medical need).

7

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff's cracked tooth, and later his painful infection/abscess, clearly required professional attention. The Complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the Defendants acted or failed to act with deliberate indifference to a known risk of serious harm.

## Count 1 – Deliberate Indifference – Dr. Narodistky

Much of Narodistky's care for Plaintiff during the time period covered in the Complaint appears to be appropriate to address Plaintiff's needs – after Narodistky's attempt to repair the broken tooth by building it up, he responded to Plaintiff's report of pain by prescribing pain medication and antibiotics. After the x-ray in April 2017 revealed an infection, he treated that condition promptly, and performed some steps toward a root canal in order to drain the infection. Plaintiff states that the infection was nearly resolved after that treatment. At that point,

Narodistky attempted to refer Plaintiff to an outside provider so the root canal could be completed – an action which reflects a reasonable response to Plaintiff's need for treatment at that time, rather than deliberate indifference. When the outside referral was denied, Narodistky continued his efforts to treat Plaintiff by obtaining permission to get the instrument he would need to complete the root canal. All of these efforts were in line with Plaintiff's desire to save the tooth rather than have it extracted, and do not demonstrate deliberate indifference to Plaintiff's dental condition. Narodistky cannot be faulted for the fact that Plaintiff was transferred away from Robinson, thus thwarting the plan to finish the root canal.

On the other hand, Narodistky's initial refusal to provide Plaintiff with any other treatment than an extraction, and the ensuing delay before the January 2017 procedure to restore Plaintiff's cracked tooth, could support a claim for deliberate indifference. Plaintiff suffered additional damage to the tooth, as well as pain, discomfort, and difficulty eating during that period. Narodistky's action of "snatching off" a cracked piece of Plaintiff's tooth (an allegation that the Court must accept as true at this stage) may have aggravated Plaintiff's difficulty with eating, and/or increased the risk of infection. More time went by between the January 2017 procedure and the development of Plaintiff's serious infection in April 2017, during which an earlier assessment of Plaintiff's condition might have avoided the complications that followed (but it is not clear whether Plaintiff alerted Narodistky to any problems before April 4, 2017). In Plaintiff's view, if Narodistky had been willing to attempt repair of his tooth when Plaintiff first requested it, the root canal which Narodistky ultimately decided to perform could have been completed long before Plaintiff's transfer. However, Plaintiff's reluctance to have the tooth extracted also contributed to the delay that elapsed before Narodistky attempted the alternative treatment.

As noted above, a prisoner may not "demand specific care," or dictate his own course of treatment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). However, presenting an inmate with only one treatment option – extraction of a tooth – with the only other option being no treatment at all, is troubling, particularly when Narodistky explained that cost concerns were driving his recommendation that Plaintiff have the tooth pulled. Deliberate indifference may be inferred when a medical or dental provider makes a treatment decision that falls far afield of accepted professional medical judgment. *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2009). At this point, there is insufficient information to determine whether Narodistky's recommendation to extract the tooth, as well as his other treatment decisions, fell within the realm of acceptable professional judgment.

Plaintiff raises an additional matter – his request for 2 partials, to replace teeth that had been extracted before he sought treatment for the cracked tooth. He complains that he should have been given those partials without being required to pay the $80 charge.

An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services. Whether or not a statutory exemption should apply to the co-payment rule is a question of state law, not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). In Plaintiff's case, the $80 charge may be considered to fall above the "modest" fee level for a dental service. Additionally, if Plaintiff suffered pain or serious difficulty eating because of not having the partials, the denial of the partial(s) could amount to deliberate indifference.

In light of the concerns outlined above, the Court concludes that it would be premature to

dismiss Plaintiff's deliberate indifference claim against Narodistky at the threshold review stage. Therefore, the claim in **Count 1** shall proceed for further consideration.

**Dismissal of Count 2 – Deliberate Indifference – Rains, Martin, & Slickenmeyer**

Plaintiff makes only a brief mention in the statement of claim of Rains, Martin, and Slickenmeyer. Plaintiff states that he asked Martin about a grievance, to which Martin responded "the rules are the rules . . . I don't know what to tell you." (Doc. 1, p. 17). These brief facts, which do not even identify the issue raised in Plaintiff's grievance, are insufficient to support a claim of deliberate indifference against Martin.

The only other claim Plaintiff makes is that Martin, Rains, and Slickenmeyer failed to address his dental needs after he wrote them the letter on April 4, 2017, complaining about the course of his treatment by Dr. Narodistky. The contents of that letter did put the recipients on notice that Plaintiff was in need of further dental care. If no action was taken, then Plaintiff might be able to sustain a deliberate indifference claim against one or more of them. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences"). However, Plaintiff's summary of events in his attached grievances shows that soon after he sent the letter, Plaintiff was called in to see the dentist and was given an x-ray – which was one of the specific complaints he raised in the letter. This strongly suggests that either Martin, Rains, or Slickenmeyer took action to ensure that Plaintiff got the necessary x-ray. Following that test, Narodistky provided further treatment to Plaintiff. This sequence of events does not support a deliberate indifference claim against Martin, Rains, or Slickenmeyer – but instead indicates that

they responded to Plaintiff's letter in a reasonable manner, which resulted in further treatment.

For these reasons, **Count 2** against Martin, Rains, and Slickenmeyer shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 3 – Deliberate Indifference – Dr. Sandhu

According to Plaintiff, Dr. Narodistky sent a request to Dr. Sandhu in April 2017, seeking authorization to send Plaintiff to an outside dental provider who could complete the root canal work on Plaintiff's tooth, after Narodistky did "80 percent" of the job while draining Plaintiff's infection. However, Dr. Sandhu denied the request. As a result, Plaintiff was forced to wait until Narodistky could obtain the tool he needed to finish the root canal at the prison. This delay prolonged the time that Plaintiff had to continue living with a damaged tooth – and turned out to prevent Plaintiff from having the procedure at all, when Plaintiff was transferred to another prison. Sandhu's denial of the referral for treatment, and the delay in treatment that ensued, may support a deliberate indifference claim against him. **Count 3** shall therefore proceed for further review.

### Dismissal of Count 4 – Dental Malpractice

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

Plaintiff does not articulate a claim for dental malpractice against Narodistky, and it is not clear from the Complaint whether he is attempting to assert such a state law claim. If

Plaintiff desires to pursue a malpractice claim, the Court would have supplemental jurisdiction over it, because the factual basis is identical to the constitutional claims discussed above in Counts 1 and 3. However, he cannot sustain a malpractice claim based on the documents he has submitted to the Court to date.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2017).[3] A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). In Plaintiff's

---

[3] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on Validity of 735 ILL. COMP. STAT. §5/2-622 (West 2013).

13

case, he has not submitted an affidavit stating whether he has consulted with a qualified health professional, nor has he submitted a report/certificate of merit from a professional. If he wishes to assert a malpractice claim based on the facts in his Complaint, he must submit these documents.

At this time, the claim in **Count 4** shall be dismissed for failure to state a claim upon which relief may be granted. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required affidavit, if he desires to seek reinstatement of this claim. The certificate of merit must also be filed, in accordance with the applicable section of §5/2-622(a). Should Plaintiff fail to timely file the required affidavit/certificate of merit, the dismissal of **Count 4** may become a dismissal **with prejudice.** *See* FED. R. CIV. P. 41(b).

### Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) is **TERMINATED AS MOOT**. No such motion is necessary for a Plaintiff who has been granted leave to proceed *in forma pauperis* ("IFP"). The Court shall order service on all defendants who remain in the action following threshold review under § 1915A. 28 U.S.C. § 1915(d).

### Disposition

**COUNTS 2 and 4** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants **RAINS, MARTIN,** and **SLICKENMEYER** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the

dental malpractice/negligence claim in **COUNT 1** against Defendant **NARODISTKY**, Plaintiff shall file the required affidavit pursuant to 735 Ill. Comp. Stat. §5/2-622, within 35 days of the date of this order (on or before January 11, 2018). Further, Plaintiff shall timely file the required written report/certificate of merit from a qualified health professional, in compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavit or report, the dismissal of **COUNT 1** may become a dismissal **with prejudice**.

The Clerk of Court shall prepare for Defendants **NARODISTKY** and **SANDHU**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 7, 2017**

s/ MICHAEL J. REAGAN<br>
Chief Judge<br>
United States District Court